INHABITANTS OF CUMMINGTON *vs.* INHABITANTS OF
BELCHERTOWN.

Hampshire.    September 18, 1888. — May 11, 1889.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, C. ALLEN, HOLMES,
& KNOWLTON, JJ.

*Nullity of Marriage — Fraud — Decree in another State — Jurisdiction —
Insane Pauper — Settlement.*

A married woman, who had been insane prior to her marriage but had recovered
and was sane and competent to contract at that time, became incurably insane,
and was duly committed as a pauper to a lunatic hospital. Subsequently the
husband removed to another State, and there procured a decree annulling the
marriage, on the ground of fraud in concealing from him the fact of her prior
insanity. Notice of the proceedings there were served upon her at the hospital,
but she was not in any way represented therein. *Held,* that such decree was
insufficient to annul the marriage here, and could not affect a settlement derived
by her from the marriage.

CONTRACT to recover expenses incurred by the plaintiff for
the support of an insane pauper in a lunatic hospital. Trial
in the Superior Court, without a jury, before *Blodgett,* J., who
ruled that the action could not be maintained, and found for the
defendant; and the plaintiff alleged exceptions. If the ruling
was correct, it was agreed that judgment was to be entered for
the defendant; otherwise, for the plaintiff for the sum declared
for, with interest.

The case was argued at the bar for the plaintiff, and submitted
on a brief for the defendant, in September, 1888, and afterwards
was submitted on the briefs to all the judges. The material
facts appear in the opinion.

*W. G. Bassett,* for the plaintiff.

*E. H. Lathrop,* for the defendant.

DEVENS, J. Mrs. Angie L. Richards, the expenses of whose
support as an insane pauper are here in controversy, had, as
Angie L. Root, a legal settlement in the defendant town at the
time of her marriage. She acquired one in the plaintiff town
by her marriage, on June 10, 1873, with Charles A. Richards,
who was there settled. *Milford* v. *Worcester,* 7 Mass. 48. It is
the contention of the plaintiff, that, the marriage of the pauper

having been legally annulled as having been procured by fraud, her settlement in Cummington thus gained is destroyed, and that in Belchertown is revived, it having been suspended only during the *de facto* existence of the marriage.

It was held in *Dalton* v. *Bernardston*, 9 Mass. 201, that a woman acquiring a settlement by her marriage under the St. of 1793, c. 34, (Pub. Sts. c. 83, § 1, cl. 1,) did not lose her settlement by a divorce, except for a cause which would show the marriage to have been void. In the latter case, there would have been no such marriage as the statute intended as the means of acquiring a settlement. Assuming that the law would be the same where a marriage not originally void, but voidable on the ground of fraud, or for any other reason, was declared void, we consider the question whether the plaintiff has shown any sufficient evidence of a decree annulling the marriage by which the defendant or others collaterally affected by the marriage or the dissolution of it would be bound. If the pauper herself would not be bound by such a decree, it is quite clear that the defendant would not be, whether the marriage was absolutely void or voidable only. Not being a party to the decree, and unable, therefore, to take any steps to reverse it, the defendant is not precluded from showing in a collateral proceeding that the decree was erroneous, or that it has no effect such as the plaintiff claims for it. The plaintiff contends that a decree valid as against the pauper, by which her marriage with Richards has been annulled, has been rendered by the Supreme Court of New York, having jurisdiction both of the subject matter and of the parties.

It appeared that Richards and his wife lived together in this State for about a year and three months, when, in October, 1874, Mrs. Richards was adjudged insane, and legally committed to the lunatic hospital in Northampton, where she remained, with the exception of short intervals of time during which she was in the custody of her parents, until September 20, 1877, when she was again and finally committed to the hospital, and has remained, and now remains, hopelessly insane. Richards never cohabited with her after her first committal to the hospital; and at some time thereafter, but at what time does not appear, removed to the State of New York, without, however, any purpose

of there obtaining a divorce, and without then having it in mind. On November 14, 1881, Richards, having only a short time before been informed for the first time that his wife had been insane before their marriage, commenced a proceeding in New York to have the marriage annulled, on the ground that he was induced to enter into it by fraud, and, after a notice to Mrs. Richards by a summons served upon her while an inmate of the Northampton Hospital, a decree annulling the marriage on the ground that the consent of Richards to the marriage was obtained by fraud was rendered on March 30, 1882. A "transcript of the doings and record of, and testimony in, the Supreme Court, County of Fulton, State of New York," was used at the trial in the Superior Court, and the decree there rendered was relied on by the plaintiff as establishing the fact of a legal dissolution of the marriage, by which the rights of the plaintiff and of the defendant would be affected in this Commonwealth.

While by the Constitution of the United States, Art. 4, § 1, full faith and credit are to be given to the judgments of other States, the jurisdiction of the courts rendering them is open to inquiry, both as regards the subject matter of the controversy and the parties thereto. The recitals of the record are not conclusive evidence, and a party, or one affected collaterally by the judgment, may show that the court had no jurisdiction over the party such as it assumed to exercise. Mrs. Richards was, when the proceedings were commenced and concluded, an utterly insane woman. This not only appears by the finding of the Superior Court, but by all the proceedings of the New York court. It is averred in the petition addressed to it, and the allegations of the petition are found by the referee to whom the inquiries of fact were referred, and by that court, to have been true. It appears also by the return of the summons, and most clearly by the evidence taken before the referee. At no time did she, or any one on her behalf, appear before the referee or the court. Yet no guardian, next friend, or other person was appointed to represent her, and a decree annulling her marriage was rendered against a person whom the record and evidence showed to be insane, and whose rights were wholly unprotected. She had no actual residence in New York at any time. Her husband had abandoned her here on account of her insanity some time before

he went to New York, had made no provision for her support, and she had always resided in this State, which was her domicil of origin.

That a decree of divorce rendered under similar circumstances of residence and condition of the wife in another State would not be recognized in the State of New York, or allowed in any way, directly or indirectly, there to affect any rights, whether of person or property, of the party against whom it had been made, appears clearly from its decisions. *People* v. *Baker*, 76 N. Y. 78. *Jones* v. *Jones*, 108 N. Y. 415. We shall not have occasion to consider what would be the effect that should be given here to a decree of divorce, under the circumstances above stated, if such had been rendered by the New York court. Such a decree necessarily implies the original existence of a lawful marriage. A decree annulling a marriage upon the ground that it was contracted under such circumstances that the party petitioning has a right to have it so annulled, stands upon quite different grounds. The validity of a marriage depends upon the question whether it was valid where it was contracted. To this rule there are but two exceptions : marriages which are deemed contrary to the law of nature as generally recognized in Christian countries, and those marriages which the Legislature of the Commonwealth has declared shall not be valid because contrary to the policy of our own laws. *Commonwealth* v. *Lane*, 113 Mass. 458. Even when parties had gone from this Commonwealth into another State with intent of evading our own laws, and had there married, it was held reluctantly, in the absence of a statute declaring marriage solemnized there with such intent to be void here, that their validity must be recognized. *Medway* v. *Needham*, 16 Mass. 157. *Putnam* v. *Putnam*, 8 Pick. 433.

Without discussing the failure to appoint a guardian, the service in the case at bar on Mrs. Richards can have given the New York court no jurisdiction over her personally. To hold that her domicil might be changed to any other State by the act of her husband in removing thereto after he had abandoned her here and ceased to support her, and thus that she could be deprived of the protection in her marital rights, whether of person or property, which this State could extend to her, would be to

use the legal fiction of the unity created by the marriage to her serious injury, and to work great injustice.

If the decree of the New York court is to have any validity here, it must be on grounds of comity. *Blackinton* v. *Blackinton*, 141 Mass. 432, 436. There can be no ground of comity which requires that we should recognize the decree of a New York court annulling a Massachusetts marriage between Massachusetts citizens, unless it had jurisdiction of both the parties; nor even if it did have such jurisdiction should it be recognized here, unless it was based upon grounds which are here held to be sufficient. Suppose two citizens of Massachusetts are married here, each of the age of eighteen years, have children, and then move to New York, where the husband obtains a decree of nullity on the ground that persons under the age of twenty-one years cannot lawfully marry. The children are not therefore rendered illegitimate in Massachusetts, so that they cannot here inherit their father's lands. Marriages between blacks and whites are still prohibited in some of the States, but a decree in such a State annulling a marriage of this character valid where contracted could not here be regarded. Illustrations of this sort, growing out of the different laws as to marriage in the several States, could readily be multiplied. The right of a State to declare the present or future status, so far as its own limits are concerned, of persons there lawfully domiciled, cannot be extended so as to enable it to determine absolutely what such status was at a previous time, and while they were subject to the laws of another State. The decrees of its courts in the latter respect must be subject to revision in the State where rights were then existing, or had been acquired. *Blackinton* v. *Blackinton*, 141 Mass. 432.

The cause alleged and found by the New York court was not sufficient to annul a marriage contracted in Massachusetts between its citizens according to the laws of this Commonwealth. Assuming that a marriage may here be declared void on account of fraud, and assuming that fraud is a cause which will enable the party defrauded to maintain a libel for the dissolution of the marriage which has thereby been procured, although the word "fraud," which is found in the Gen. Sts. c. 107, §§ 4, 5, is omitted in the Pub. Sts. c. 145, § 11, no fraud was shown such

as would enable a party here to avoid a marriage. Mrs. Richards was sane at the time of her marriage, and entirely competent to make the marriage contract; she had been insane at a previous period, but had recovered from such attacks, and the fact of such previous insanity was concealed from her husband by Mrs. Richards herself and her family, in the hope that marriage would prove beneficial to her health. She lived with her husband about a year and three months before symptoms of insanity again developed themselves. The possibility or probability that she might again become insane, growing out of the fact that she had previously been so, did not constitute such a fraud as entitled her husband to have the marriage dissolved.

There was no fraud of such a character as to affect the basis or the essential character of the contract. *Donovan* v. *Donovan*, 9 Allen, 140. *Foss* v. *Foss*, 12 Allen, 26. " It is not to be supposed that every error or mistake into which a person may fall concerning the character or qualities of a wife or husband, although occasioned by disingenuous or even false statements or practices, will afford sufficient reason for annulling an executed contract of marriage. . . . Therefore no misconception as to the character, fortune, health or temper, however brought about, will support an allegation of fraud on which a dissolution of the marriage contract, when once executed, can be obtained in a court of justice." Bigelow, C. J., in *Reynolds* v. *Reynolds*, 3 Allen, 605.

Upon the ground, then, that the decree of the New York court attempts to annul a marriage contracted in Massachusetts between Massachusetts citizens, and thus affect the legal status of the woman who has remained domiciled in Massachusetts, and has never been within the jurisdiction of the New York court, and deprive her of the rights acquired by her marriage, and especially because it declares the marriage void for a reason on account of which, by the Massachusetts law, it cannot be avoided, we are of opinion that it should not be enforced here, and that no principle of interstate comity requires that we should give it effect.

For these reasons, a majority of the court are of opinion that the settlement acquired by Mrs. Richards by her marriage continues, and that judgment should be entered for the defendant.

*Judgment for the defendant.*