BETSY E. FELT, complainant and appellant,

*v.*

JOSEPH F. FELT, defendant and respondent.

[Filed December 22d, 1899 ]

Interstate comity requires that a decree of divorce pronounced by a court of the state in which the complainant is domiciled, and which has jurisdiction of the subject-matter of the suit, shall, in the absence of fraud, be given full

Felt *v.* Felt.

force and effect within the jurisdiction of a sister state, notwithstanding that the defendant does not reside within the jurisdiction of the court which pronounced the decree and has not been served with process therein; provided, that a substituted service has been made in accordance with the provisions of the statute of that state and that actual notice of the pendency of the suit has been given to the defendant and a reasonable opportunity afforded to put in a defence thereto; and provided further, that the ground upon which the decree rests is one which the public policy of the state in which it is sought to be enforced recognizes as a sufficient cause for divorce.

On appeal from a decree advised by Vice-Chancellor Pitney, whose opinion is reported in *12 Dick. Ch. Rep. 101.*

*Mr. Frank L. Holt,* for the appellant.

*Mr. Washington B. Williams,* for the respondent.

The opinion of the court was delivered by

Gummere, J.

The appellant, by her bill in this case, seeks a decree of divorce from her husband for adultery and also for desertion. The respondent has pleaded, in bar of the relief sought, a decree of absolute divorce obtained by him against the appellant in a district court of the Territory of Utah. A full recital of the averments of the plea is not necessary. It is sufficient for present purposes to say that the truth of those averments is conceded by the appellant; that from them it appears that the court which rendered the decree pleaded had jurisdiction of the subject-matter of the suit and of the respondent here, who was the complainant therein, and who, at the time of the institution of the suit, was a *bona fide* resident of the Territory of Utah; that the domicile of his wife was in this state and that she was neither served with process within the Territory of Utah nor did she personally submit herself to the jurisdiction of the court, but that jurisdiction was obtained by publication of the process and complaint, made in accordance with the statutes of Utah; that in addition, personal service thereof was made upon

her, at her residence in New Jersey, a sufficiently long time before the period within which to make answer had expired, to afford her an opportunity to defend the suit if she had desired to do so, and that the decree was granted upon two grounds, viz., cruelty and desertion.

What force and effect will be attributed to a decree of divorce rendered in a court of a sister state, where the jurisdiction of the court rests solely upon the domicile of the complainant, and where the defendant, being a non-resident, is brought into court by publication and the service of notice outside the jurisdiction, is a question of first impression in this court. It will not be denied that the preservation of good morals and a proper regard for social relations make it desirable that such a decree should be considered valid not only in the state where it is pronounced but in every other jurisdiction, provided the grounds upon which it is based are recognized in such jurisdiction as justifying the decree. By it the matrimonial relation of the husband and wife is terminated in the state in which it is rendered. Within the boundaries of that state a marriage afterward contracted by either of the parties with a third person is entirely valid. So, too, sexual relations between the former husband and wife within that jurisdiction subsequent to the entry of the decree are illicit unless sanctioned by a new marriage. But if the decree is without extra-territorial force the entire *status* of both parties is reversed as soon as they pass beyond the limits of that state. A subsequent marriage to a third person within that state then becomes void and the relations of the parties to it become adulterous, while sexual relations between the parties to the decree, which are meretricious if indulged in within that state, become matrimonial again when indulged in without its borders. A condition of the law which makes the intercourse of a man and woman either legitimate or adulterous as they happen to be within the limits of one state or another is not to be tolerated any further than is plainly required by public policy.

That the public policy of New Jersey does not require that recognition should be refused to a decree of divorce, rendered

Felt v. Felt.

by a court of a sister state, because the defendant had her domicile in another state and was not within the jurisdiction of that court, seems to me plain. State policy, when determined by the legislative, controls the judicial branch of the government; and the legislature of New Jersey, by vesting in our court of chancery sole jurisdiction over the subject of divorce, and then authorizing it to render decrees divorcing, *a vinculo,* 'resident complainants from non-resident defendants after obtaining jurisdiction over the latter by publication, and notice served out of the state upon, or mailed to the post-office address of, the latter, has, as it seems to me, declared what our policy in this regard shall be. That it was intended by the legislature that decrees of divorce so rendered should be valid in every jurisdiction, so far as it had the power to make them so, goes without saying; and it cannot be conceived that it was intended that we should refuse to accord to the decrees rendered in the courts of our sister states against non-resident defendants who have not submitted themselves to the jurisdiction of such courts, the efficacy we claim for our own when liable to the same objection.

As has been heretofore stated, the question before us has never been determined in this court. It, however, received consideration in *Doughty* v. *Doughty, 1 Stew. Eq. 581,* although the case was decided upon another ground. In that case, Chief-Justice Beasley, delivering the opinion of the court, says: "A judgment of divorce, resting even on such a contracted foundation as the domicile of one of the parties alone, bears with it, into other jurisdictions, a title to respect, and, in some cases, a claim to voluntary adoption. In such instances, I regard the question whether the judgment shall be extra-territorially enforced to be one resting entirely on the consideration that, in a ·matter of unusual interest of this nature, an obligation rests upon every government to carry into effect as far as is reasonably practicable, and as may be consistent with its own policy, all foreign judgments. But an appeal of this kind to interstate comity should, I think, never prevail when the judgment sought to be accredited has been rendered in violation of that fundamental axiom of justice that the parties, before their rights are adjudged,·

39

shall have an opportunity of being heard. A judgment of divorce proceeding from a jurisdiction founded on domicile would not contravene essential rules of natural justice if actual notice to appear had been served on the defendant residing abroad. It is true that a notice so served, on a litigant out of the jurisdiction in which a suit is pending, may add nothing to the judicial right to take cognizance over the cause, but, nevertheless, it may impart a quality to the resulting judgment that will serve as a credential to it in a foreign jurisdiction."

There is much contrariety of opinion upon the question, in the courts of the various states, but the weight of authority seems to support the view expressed in *Doughty* v. *Doughty*, to this extent at least, that interstate comity requires that a decree of divorce pronounced by a court of the state in which the complainant is domiciled, and which has jurisdiction of the subject-matter of the suit, shall, in the absence of fraud, be given full force and effect within the jurisdiction of a sister state, notwithstanding that the defendant does not reside within the jurisdiction of the court which pronounced the decree, and has not been served with process therein; provided, that a substituted service has been made in accordance with the provisions of the statute of that state, and that actual notice of the pendency of the suit has been given to the defendant and a reasonable opportunity afforded to put in a defence thereto; and provided further, that the ground upon which the decree rests is one which the public policy of the state in which it is sought to be enforced recognizes as a sufficient cause for divorce.

That view commends itself to us, and we think that, subject to the limitations mentioned, the courts of New Jersey should, as a matter of interstate comity, recognize as valid a decree of divorce rendered by the court of a sister state against a resident of this state who has not been served with process.

In the case before us the court pronouncing the decree which has been pleaded in bar of the relief sought by the complainant was a court of the domicile of the present defendant. It had jurisdiction of the subject-matter of the suit. There was a substituted service of process upon the defendant therein (the

Felt *v.* Felt.

present complainant) by publication, in accordance with the provisions of the Utah statute. Actual notice of the pendency of the suit was given to her in time to have enabled her to make defence thereto if she had desired to do so. There is not even a suggestion that the decree is tainted by fraud, and one of the grounds upon which it rests—namely, desertion—is recognized by the laws of this state as justifying the dissolution of the marriage relation.

The decree appealed from should be affirmed.

MAGIE, CHIEF-JUSTICE (dissenting).

I find myself unable to concur in the affirmance of the decree in this cause, and deem it my duty to briefly state the reasons which impel me to dissent from the decision of the learned vicechancellor who advised the decree and the views of so large a majority of my associates in this court who approved his decision.

If the adjudication of the court of the Territory of Utah, to which effect is given by the decree, was one affecting the personal rights and obligations of Mrs. Felt, against whom it was made, it is indisputable that it was not an adjudication which we are compelled to recognize by the imperative provision of the constitution of the United States, because she was neither served with process within the jurisdiction of that court nor did she appear in the proceedings. *Pennoyer* v. *Neff, 95 U. S. 714.*

But the contention is twofold, viz.—*first,* that the adjudication in question was one affecting, not personal rights or liabilities but a *status* or *res,* the marriage relation between the parties, and that in such a case jurisdiction to adjudicate is acquired by substituted or constructive service by publication or the like, pursuant to the law of the forum, and that an adjudication in respect to such *status* after jurisdiction has been thus acquired will be one which the constitution of the United States requires other states to recognize and accept; or *second,* if that is not so, that in such a case, when the substituted or constructive notice provided for by the law of the forum is supplemented by actual

notice to the party against whom relief is sought, in time to give opportunity to appear and contest, an adjudication made thereon, although the notice was given in another state and the party has not appeared, must be recognized in this state on grounds of interstate comity.

I am unable to discover from the opinion below whether the learned vice-chancellor rested his conclusion upon the first argument or the second, but I do not deem either of them sound or supportable.

The theory that an action for divorce is in all cases a mere action *in rem* is in my judgment a misconception. When both parties are domiciled in the jurisdiction in which the action is brought it resembles an action *in rem*, because the *status* or condition which it attacks is wholly within that jurisdiction, but where the parties are domiciled in different states the *status* is not exclusively within the jurisdiction of the courts of one domicile.

Marriage undoubtedly creates a *status* by means of a contract entered into between husband and wife under the sanction of the state. Unlike other contracts, this may not be rescinded or abrogated by the consent of the parties, but only in a mode or by judicial proceedings, also sanctioned by the state. There is, therefore, an interest in the preservation or the rescission of the marital contract and the *status* which was created by it, not only in the parties who contracted but in the state in which they are domiciled. If the parties have acquired different domiciles an interest of each state in the preservation or destruction of the marital *status* exists.

While it may be conceded that a husband, acquiring in good faith as in this case a different domicile from that of his wife, may appeal to the courts of his domicile and obtain such relief as its laws afford, yet it does not follow that the adjudication giving such relief will properly operate upon the marital contract and *status* in respect to either the state of the wife's domicile or the wife herself. If a divorce proceeding bears in any case a resemblance to a proceeding *in rem* the analogy fails when the husband and wife have different domiciles, because the

Felt *v.* Felt.

*rem* is not wholly within the jurisdiction in which the husband seeks relief, but exists, also, in the place of the wife's domicile, in which she has a *status* as a married woman under the protection of the state. As to that the court of the husband's domicile acquires no jurisdiction, and its adjudication cannot claim any extra-territorial effect within the constitutional provision.

In the view thus expressed, I have the support of the decisions of courts of the highest authority. Beginning with the masterly discussion of the subject by Judge Folger, in *People* v. *Baker, 76 N. Y. 78,* the court of appeals of New York in many successive cases have maintained the doctrine I contend for. *O'Dea* v. *O'Dea, 101 N. Y. 23; Jones* v. *Jones, 108 N. Y. 415; DeMeli* v. *DeMeli, 120 N. Y. 485; Williams* v. *Williams, 130 N. Y. 193; Matter of Kemball, 155 N. Y. 62.* Like views are expressed by the courts of Massachusetts, North Carolina and Pennsylvania. *Hanover* v. *Turner, 14 Mass. 227; Lyon* v. *Lyon, 2 Gray 367; Blackinton* v. *Blackinton, 141 Mass. 432; Irby* v. *Wilson, 1 Dev. & B. Eq. 568; Harris* v. *Harris, 115 N. C. 587; Arrington* v. *Arrington, 102 N. C. 491; Colvin* v. *Reed, 55 Pa. St. 375; Reel* v. *Elder, 62 Pa. St. 308.* The opposite view is maintained by other courts and supported by authors of high repute. But for the reason above given, I think the jurisdiction of the courts of a foreign state to pronounce a definite judgment upon the *status* of a resident of this state, who has not been served with process or appeared to the action, cannot be admitted without an abandonment of fundamental principles. Nor can I perceive the least ground for a distinction between adjudications abrogating the marriage contract and dissolving the marital relation and adjudications respecting the incidental rights and duties which arise out of that relation, such as alimony, dower, curtesy, custody of children. Yet we have declared that our act will not justify a decree for alimony against a defendant not domiciled here and who had not been served with process here, nor entered appearance in the suit. *Lynde* v. *Lynde, 9 Dick. Ch. Rep. 473; S. C., 10 Dick. Ch. Rep. 591; Hervey* v. *Hervey, 11 Dick. Ch. Rep. 166; S. C., 11 Dick. Ch. Rep. 424.* In some of the states which recognize an extra-ter-

ritorial effect in divorce decrees obtained in proceedings where the defendant is domiciled elsewhere and only brought in by constructive service of process, the like effect is given to the decrees in respect to these incidents of the marital *status*, in others such effect is, I think inconsistently, denied.

The contention that the Utah decree of divorce in this case ought to be recognized here on grounds of interstate comity, because it appears that notice of the pendency of the proceeding there was actually given to the wife in this state in time to have enabled her to appear and contest against the adjudication, remains to be considered.

In *Doughty* v. *Doughty, 1 Stew. Eq. 581,* Chief-Justice Beasley, after pointing out that jurisdiction in divorce suits arising out of the *status* and domicile of one of the parties would not impart to the judgment therein such efficiency as would result if the proceeding was *strictly in rem,* and that an appeal to interstate comity ought not to prevail when the judgment sought to be thus accredited has been rendered in violation of the fundamental axiom that the parties, before their rights are adjudged, should have an opportunity to be heard, suggested that an actual notice to the party residing abroad while adding nothing to the judicial right to take cognizance of the cause, might, nevertheless, impart a quality to the judgment that would serve as a credential to it in a foreign jurisdiction.

The view thus suggested was entirely unnecessary for the decision of that case. The tentative way in which it was expressed justly leads to the conclusion that it was not intended to exhibit the deliberate and matured opinion of that distinguished jurist. The question is *res integra* here and the soundness of the view expressed may be considered.

The first observation I make upon this view is that neither in the suggestion of the chief-justice nor in the opinions of the courts which have adopted it is the manner and sufficiency of such a supplemental notice determined. How is the existence of sufficient notice to be determined? Shall it be by legislation of the domicile of jurisdiction or the foreign domicile in which the defendant resides? Is any legislation essential to give effect

Felt v. Felt.

to notice actually given? If not will oral notice or notice by letter of the pendency of the suit suffice? Obviously, the fact on which comity is urged to recognize the validity of a foreign judgment respecting one of the relations of life of the utmost importance to human society is left in the vaguest and most uncertain condition.

It may further be observed that the question is whether jurisdiction to adjudicate, not in respect to the party domiciled within the state in which the proceeding is pending but in respect to the *status* of the party domiciled in the foreign state and under the protection of its laws, exists. In this aspect, to hold that jurisdiction was acquired by mere notice served without the jurisdiction would violate all the fundamental principles on which jurisdiction to adjudicate on individual rights is based, viz., that, as Chief-Justice Beasley declared, parties before their rights are adjudged shall have an opportunity to be heard, and this must mean an opportunity afforded by legal process or appearance and not by unofficial, unaccredited and uncertain notification.

If I could find any force to be attributed to this Utah decree by virtue of the notice given to Mrs. Felt in New Jersey, I should still be unwilling to recognize it, because, in my judgment, comity does not require us to do so. The public policy of this state on the subject and causes of divorce is clearly expressed in our statutes. Contracts lawful and enforceable in another state will not be enforced here against our citizens if they are in contravention of the plain public policy of the state. *Flagg* v. *Baldwin, 11 Stew. Eq. 219.* In like manner, comity will not require us to recognize a foreign decree dissolving the marital relation of a citizen for a cause contrary to the public policy here adopted. This decree is based, among others, on the ground of cruel treatment, causing mental distress—a cause which it is needless to say is not within those which our public policy recognizes.

But, apart from this reason, I am of opinion that comity will not require us to recognize this Utah decree because of the actual service of notice on Mrs. Felt here. Poverty, sickness,

distance or other circumstances might prevent her availing her-self of an opportunity to contest the proceedings. When there is service in the place of the forum and the law prescribes the effect thereof, such circumstances can have no place in judicial consideration and the effect presented must be attributed. But when the notice is not within the forum and has no prescribed effect, it is as it were nothing and does not, in a legal sense, afford the party an opportunity to be heard. Such is the con-clusion reached in many of the cases heretofore cited, and which, therefore, need not be further mentioned.

The result is that I feel constrained to vote to reverse the decree below.

I have not felt deterred from this course by either of the two considerations that have affected my brethren.

It must be admitted that the view I take, reduced to its prac-tical results, produces a condition of things which is anomalous and unfortunate. Upon the concession I have made, respond-ent is, in Utah, free from the bonds of matrimony while appel-lant is his wife here. It may be that respondent is capable of forming another marital relation elsewhere than in New Jersey, which we may be compelled to recognize, and it may also be that cohabitation with such substituted wife may be cause for divorce on the part of the first wife. These unfortunate results must be charged to the diversities and deficiencies of our laws on the subject of marriage and divorce. They afford a power-ful argument in favor of uniformity of such laws either by committing the matter to the control of the congress by an amendment of the constitution of the United States, or by a voluntary assimilation of the laws of our states and territories. But the results, however deplorable, ought not to lead us to the abandonment of fundamental principles of universal application and importance.

Nor am I affected by the fact that our legislative policy permits the entry of decrees of divorce against non-resident de-fendants upon constructive or substituted notice. Upon my construction of such legislation a decree so made is limited in its effect; it adjudicates upon the *status* of the party within the

jurisdiction and has no extra-territorial effect as to the non-resident party who has not appeared or been served. These effects I attribute to like decrees of other jurisdictions upon similar legislation. What comity requires me to concede to those decrees is all that I demand should be conceded to our decrees of the same sort.

*For affirmance*—VAN SYCKEL, DIXON, GARRISON, LIPPINCOTT, GUMMERE, LUDLOW, COLLINS, BOGERT, HENDRICKSON, ADAMS, NIXON, VREDENBURGH—12.

*For reversal*—THE CHIEF-JUSTICE—1.