Petitioner seeks a decree of divorce from defendant notwithstanding the circumstance that defendant has procured in the State of Nevada a decree of divorce against her. *Page 150 
The evidence may be said to establish that petitioner is entitled to the relief sought by her unless the decree of the Nevada court shall be deemed operative as a bar. This necessitates a determination of the force to be given in this state to the Nevada decree.
At the time of the Nevada decree (August 10th, 1925) defendant herein had resided in that state for the period required by the law of that state to confer jurisdiction of the subject-matter of the suit and of the defendant herein. Prior to and during that period the matrimonial domicile of petitioner herein was in this state. She was not served with process within the State of Nevada and did not voluntarily submit herself to the jurisdiction of the Nevada court. Jurisdiction over her was obtained by publication made in accordance with the statutes of Nevada and personal service of summons and complaint was made on her at her home in this state. Adequate time was afforded her to answer and defend the suit. The decree was for extreme cruelty which, at that time was a cause for divorce a vinculo in this state.
By section 33 of our Divorce act (Revision of 1907) it is provided that "if any inhabitant of this state shall go into another state, territory or country, in order to obtain a divorce for a cause which occurred while the parties resided in this state * * * a decree so obtained shall be of no force or effect in this state." 2 Comp. Stat. p. 2042. It is also here recognized by our courts that a decree of divorce of a sister state will be treated as a fraud alike against the courts of that and this state, and will not be given force or effect in this state against one whose domicile was in this state, if the residence of the petitioner in the sister state was not a bonafide residence. But while the evidence establishes that defendant herein deserted petitioner herein in this state and strongly suggests that he subsequently went to Nevada in order to obtain a divorce from her for the cause there alleged by him, which cause (extreme cruelty) necessarily occurred, if at all, in this state, and also strongly suggests that defendant herein did not obtain a bona fide residence in Nevada, I am unable to determine that the evidence establishes either of these *Page 151 
material facts with that degree of certainty essential to support an affirmative finding to that effect.
This necessitates a determination whether in the circumstances stated the Nevada decree shall be given force in this state.
In Haddock v. Haddock, 201 U.S. 562, our federal supreme court has definitely determined that the mere domicile within the state of one party to a marriage does not give the courts of that state jurisdiction to render a decree of divorce enforceable in all the other states by virtue of the full faith and credit clause of the federal constitution against a non-resident who did not appear and was only constructively served with notice of the pendency of the action. It follows that since this state is not required by the federal constitution to give full force and credit to the decree here in question, if the decree is to be deemed operative as a bar to the relief now sought by petitioner it must be given that force by the recognized principles of interstate comity.
In Felt v. Felt, 59 N.J. Eq. 606, it was determined by our court of errors and appeals that "interstate comity requires that a decree of divorce pronounced by a court of the state in which the complainant is domiciled, and which has jurisdiction over the subject-matter, shall, in the absence of fraud, be given full force and effect within the jurisdiction of a sister state, notwithstanding that the defendant does not reside within the jurisdiction of the court which pronounced the decree and has not been served with process therein; provided, that a substituted service has been made in accordance with the provisions of the statute of that state, and that actual notice of the pendency of the suit has been given to the defendant and a reasonable opportunity afforded to put in a defense thereto; and provided further, that the ground upon which the decree rests is one which the public policy of the state in which it is sought to be enforced recognizes as a sufficient cause for divorce."
That decision was primarily based upon the public policy of this state in matters of divorce as ascertained by the legislation on that subject then existing. Unless subsequent legislation has clearly defined a different policy that decision must *Page 152 
be followed, and the decree here in question must be recognized as a bar to the present suit. Since that time a new Divorce act has been enacted and section 33 of that act provides:
"Full faith and credit shall be given in all courts of this state to a decree of annulment of marriage or divorce by a court of competent jurisdiction in another state, territory or possession of the United States when the jurisdiction of such court was obtained in the manner and in substantial conformity with the conditions prescribed in sections five, six and seven of this act. Nothing herein contained shall be construed to limit the power of any court to give such effect to a decree of annulment or divorce by a court of a foreign country as may be justified by the rules of international comity; provided, that if any inhabitant of this state shall go into another state, territory or country, in order to obtain a decree of divorce for a cause which occurred while the parties resided in this state, or for a cause which is not ground for divorce under the laws of this state, a decree so obtained shall be of no force or effect in this state."
The interstate policy there specifically defined is that full faith and credit shall be given to a divorce decree of a sister state "when jurisdiction of such court was obtained in the manner and in substantial conformity with the conditions prescribed in sections 5, 6 and 7 of this act." Section 7 of the act, there referred to, provides as follows:
"When the defendant cannot be served personally with the process within this state, and when at time of the commencement of the action the plaintiff is a bona fide resident of this state, jurisdiction for the purpose of divorce, whether absolute or from bed and board, may be acquired by publication, to be followed, where practicable, by service upon or notice to the defendant without this state, or by additional substituted service upon the defendant within this state, as prescribed by law or rules of court, under the following conditions:
"(a) When at the time the cause of action arose, the petitioner was a bona fide resident of this state, and has continued so to be down to the time of the commencement of the action, except that no action for absolute divorce shall be commenced for any cause other than adultery, unless the petitioner has been for the two years next preceding the commencement of the action a bonafide resident of this state.
"(b) When, since the cause of action arose, the petitioner has become, and for at least two years next preceding the commencement of the action has continued to be, a bona fide
resident of this state; provided, the cause of action alleged was recognized in the jurisdiction in which the petitioner resided at the time the cause of action arose, as a ground for the same relief asked for in the action in this state." *Page 153 
It thus appears that our legislature in legislating upon the effect to be given to divorce decrees of sister states has declared that full faith and credit shall be given in this state to such decrees when the jurisdiction of such court was obtained in the manner and in substantial conformity with the conditions prescribed in section 7 of our Divorce act, and section 7, there referred to, enables a resident of this state to acquire jurisdiction of a non-resident spouse and of the cause of action by publication and service out of this state, but in its subdivision A contains a provision to the effect that the petitioner shall have been a bona fide resident of this state for the two years next preceding the commencement of the action, except in actions of divorce for adultery. This requirement of two years' residence in this state is urged as a declaration of a policy of this state to recognize no decree of divorce of a sister state, except for adultery, in which the complainant had not been a resident of the sister state for two years. Decisions in this state suggesting that view have been cited, but none in which the determination of that question appears to have been essential to the decision of the case.
I find myself unable to adopt the view suggested. I do not discern in this legislation a legislative intent to define a public policy of this state other or different from that recognized prior to the 1907 act, as that policy is exemplified in Felt v. Felt, already referred to.
In Felt v. Felt the decree of the sister state was for desertion; the petitioner in the sister state had resided there less than two years, and the desertion which was made the basis of the decree was for a period of less than two years. Our statutory ground of divorce for desertion, then, as now, was for willful, continued and obstinate desertion for the term of two years (2 Gen. Stat. p. 1274 § 40), and the section of the act defining the jurisdiction of the court of chancery in divorce cases required in suits for desertion two years' residence in this state of complainant or defendant, during the period the desertion should have continued (Ibid. p. 1273 § 39), but the shorter period of desertion and residence required by the Utah statute to give jurisdiction over the person and subject-matter does not appear to have been considered as *Page 154 
material in the determination of the broader inquiry touching the public policy of our state as defined by its divorce legislation. The fundamental doctrine there authoritatively determined was that our legislature "by vesting in our court of chancery sole jurisdiction over the subject of divorce, and then authorizing it to render decrees divorcing, a vinculo, resident complainants from non-resident defendants after obtaining jurisdiction over the latter by publication, and notice served out of the state upon, or mailed to the post-office address of, the latter, has * * * declared what our policy in this regard shall be." "That it was intended by the legislature that decrees of divorce so rendered should be valid in every jurisdiction, so far as it had the power to make them so, goes without saying; and it cannot be conceived that it was intended that we should refuse to accord to the decrees rendered in the courts of our sister states against non-resident defendants who have not submitted to the jurisdiction of such courts the efficiency we claim for our own when liable to the same objection." In the concluding paragraph of the opinion in that case it is said: "In the case before us the court pronouncing the decree which has been pleaded in bar of the relief sought by the complainant was a court of the domicile of the present defendant. It had jurisdiction of the subject-matter of the suit. There was a substituted service of process upon the defendant therein (the present complainant) by publication, in accordance with the provisions of the Utah statute. Actual notice of the pendency of the suit was given to her in time to have enabled her to make defense thereto if she had desired to do so. There is not even a suggestion that the decree is tainted by fraud, and one of the grounds upon which it rests — namely, desertion — is recognized by the laws of this state as justifying the dissolution of the marriage relation."
The inherent force of the decree of a sister state is primarily founded on a bona fide residence — domicile — of the complaining party in the sister state and the conformity of the decree to the laws of that state in a cause for divorce recognized by the laws of this state. The circumstance that this state requires a two-year period of desertion and a sister state *Page 155 
awarding a decree of divorce for desertion requires but one year, or that this state requires two years' residence in certain causes for divorce and a sister state may require but one, are matters appropriately conceded to each jurisdiction in legislating remedies for its bona fide residents, and are not matters which may be said to fall within or limit the broader rules of interstate comity and define a general policy of either state in matters of interstate comity. This view, I think, must be said to have been assumed in Felt v. Felt, in which both the period of desertion and residence in the sister state had been less than two years, and in Gildersleeve v. Gildersleeve,88 Conn. 689, that general view is specifically adopted. In the latter case the Connecticut divorce statute required two years' desertion. The divorce decree of South Dakota, procured by substituted service and interposed as a defense to a divorce suit in Connecticut, was based on desertion for but one year. The reported opinion says as to that: "It has long been the policy of this state to grant divorces for desertion. Surely the period of it is not so much of the essence of the matter, and does not so vitally affect public policy that it reasonably can be said that the granting of divorce for a period of desertion less than our own is so repugnant to our conception of public policy and of what makes for good morals as to justify us in refusing to recognize the judicial action of sister states in dissolving marriages under the conditions stated." And our Divorce act now, as fully as heretofore, clearly contemplates that faith and credit shall be given to our decrees of divorce in all other states, even though in some such states more than two years' residence may be required of its citizens in like circumstances. It cannot be assumed that our legislature intended in matters of interstate comity to accord to decrees of courts of other states less force than it asks other states to accord to our decrees in like circumstances. That, as I understand it, is the determining factor of state policy in Felt v. Felt and equally so at this time. That part of section 33 of our Divorce act here under consideration is but an affirmative declaration that full force and credit shall be given to divorce decrees of sister states when jurisdiction has been obtained in the manner and in *Page 156 
substantial conformity with the conditions there stated. To attribute to this, by implied negative, a legislative intent to radically change an authoritatively settled and recognized policy of our state seems impossible; such a legislative intent may be appropriately sought with greater certainty and precision. The difficulties with which our courts heretofore have been confronted in construing sections 6 and 7 of our Divorce act have been occasioned by the legislative attempt to unite in those sections, obviously for convenience, provisions touching jurisdiction over the litigants and over the cause. It is with the former that interstate comity is primarily concerned; the proviso of section 33 protects the latter.
A decree will be advised dismissing petitioner's petition.