This is an appeal from an order dismissing a bill of complaint for want of jurisdiction, on a motion of defendant "appearing herein especially for this motion and for no other purpose."
The bill alleges that: Plaintiff and defendant were married in Baltimore in 1929, and have two children, aged fourteen and eight respectively. Plaintiff for more than a year "has been a resident" of Baltimore; defendant "is a nonresident" of Maryland, and "is living" and "residing" in Miami, Florida, her exact address is unknown. Plaintiff has always been a kind, faithful and affectionate husband. Plaintiff and defendant resided *Page 169 
together in Baltimore, at 3713 Columbus Drive. their "joint home". Defendant on January 20, "without cause or provocation abandoned and deserted" plaintiff, taking with her the younger child, and for several months plaintiff "was unable to locate either his wife or his child". In July, 1948 plaintiff was informed that defendant "had established residence" in Miami, [Dade County], Florida, "for the purpose of securing a divorce" in Florida; on June 29, 1948 the Circuit Court for Dade County, Florida did issue a divorce a vinculo to defendant. Defendant "is the offending spouse, having deserted and abandoned [plaintiff] for the purpose of securing a divorce in accordance with the laws of * * * Florida; * * * the * * * divorce was issued by * * * Florida without having jurisdiction over the parties, [defendant] having left * * * Maryland for the sole purpose of securing a divorce in * * * Florida, having no grounds for divorce in * * * Maryland * * * and * * * the * * * divorce was issued on fraudulent and perjured testimony". Plaintiff and defendant own, as tenants by the entireties, fee simple property 3713 Columbus Drive, Baltimore. Plaintiff has been advised by defendant's Florida attorney that "on the basis of the Florida decree of divorce" defendant "is contemplating the sale of her undivided one-half interest" [sic] in the property owned by the entireties in Baltimore. Because of the Florida decree and "the actions" of defendant in leaving the marital home, the separation between plaintiff and defendant "is the final and deliberate act" of defendant and "is final and deliberate and is now beyond any reasonable hope or expectation of a reconciliation.
Plaintiff prays (a) a divorce a mensa; (b) that the court declare the Florida divorce decree "as null and void"; (c) that defendant be enjoined from disposing of her interest in the Columbus Drive property pending the outcome of this case; (d) that plaintiff "be awarded the care and custody" of the two children; and (e) general relief. Presumably pursuant to General Equity Rules 7, 8, 10 and 11 (2) and (4), Code, 1947 Supplement, *Page 170 
pp. 2008-2010, there is no prayer for process. Apparently no subpoena issued, but notice by publication was given.
Defendant, appearing specially, moved to dismiss the bill because, "as appears from the bill", defendant is domiciled and actually resides in Florida and is a non-resident of Maryland, and the bill collaterally attacks the Florida divorce decree and the courts of Maryland have no jurisdiction to pass upon such collateral attack. The motion, therefore, was made, and was disposed of without testimony, on the allegations of the bill. This motion was not a demurrer to the bill, but an application, by a special appearance, to dismiss for lack of jurisdiction over defendant without personal service or general appearance. Ortmanv. Coane, 181 Md. 596, 605, 31 A.2d 320, 145 A.L.R. 1388. Special appearance for the purpose of filing a demurrer is not authorized. Borchert v. Borchert, 185 Md. 586, 590,45 A.2d 463, 162 A.L.R. 1078; Cf. Keen v. Keen, 191 Md. 31, 41,60 A.2d 200, 205. On this motion we are not authorized to decide whether the allegations of the bill state a case for equitable relief.Evans v. Zouck, 172 Md. 12, 13-14, 17, 190 A. 523. We are not, however, prevented from deciding the question of jurisdiction by the fact that that question may involve, wholly or partly, the same questions which would be presented by a demurrer to the bill.
In a suit for a divorce or separation the only res in Maryland which will support jurisdiction in rem is the marital status when one or both parties are domiciled in Maryland.Garner v. Garner, 56 Md. 127; Adams v. Adams, 101 Md. 506,61 A. 628. Until Williams v. North Carolina, 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279, 143 A.L.R. 1273, was decided in 1942, the Constitution of the United States did not require the State of Maryland to give any credit to an "ex parte divorce" (Sherrer v. Sherrer, 334 U.S. 343, 349, 68 S.Ct. 1087, 1097, 92 L.Ed. 1429, 1 A.L.R.2d 1355) granted, without personal service or appearance, in a state which was not *Page 171 
the marital domicile (Atherton v. Atherton, 181 U.S. 155, 21 S.Ct. 544, 45 L.Ed. 794), or the domicile of the defendant.Haddock v. Haddock, 201 U.S. 562, 26 S.Ct. 525, 50 L.Ed. 867, 5 Ann. Cas. 1; Walker v. Walker, 125 Md. 649, 94 A. 346, Ann. Cas. 1916B, 934. If the state where the divorce was granted was not the domicile of either party, another state was not required to recognize the divorce, even though both parties had appeared.Andrews v. Andrews, 188 U.S. 14, 23 S.Ct. 237, 47 L.Ed. 366, cited in Walker v. Walker, supra, and overruled in Sherrer v.Sherrer, 334 U.S. 343, 353, 68 S.Ct. 1087, 1097, 92 L.Ed. 1429, 1 A.L.R.2d 1355.
Apparently some states, e.g., New York, North Carolina and South Carolina, refused to recognize any ex parte divorces granted in other states. Most states held that, upon principles of comity, such divorces, granted by a court of "the state in which the complainant is domiciled" should, "in the absence of fraud", be recognized, provided "that the ground upon which the decree rests is one which the public policy of the State in which it is sought to be enforced recognizes as a sufficient cause for divorce". Felt v. Felt, 59 N.J. Eq. 606, 610, 45 A. 105, 49 A. 1071, 47 A.L.R. 546, 83 Am. St. Rep. 612; Atherton v. Atherton,supra, 181 U.S. at page 168, 21 S.Ct. 544, 45 L.Ed. 794. In some states some such principles of comity had been recognized by statute. In 1835 Massachusetts enacted: "§ 39. When anyinhabitant of this state shall go into any other state or country, in order to obtain a divorce [1] for any cause, which had occurred here, and whilst the parties resided here, or [2] for any cause, which would not authorize a divorce, by the laws of this state, a divorce so obtained shall be of no force or effect in this state. § 40. In all other cases, a divorce decreed in any other state or country, by a court having jurisdiction
of the cause and of both of the parties, shall be valid and effectual in this state." [Italics and bracketed numbers supplied]. Rev. L. 1835, c. 76. This statute, in substance, is still in force. Massachusetts Gen. Laws, c. 208, § 39 (1932). It merely formulated *Page 172 
a prior rule of judicial origin. Hanover v. Turner,14 Mass. 227, 7 Am. Dec. 203; Haddock v. Haddock, supra, 201 U.S. at page 588, 26 S.Ct. 525, 50 L.Ed. 867, 5 Ann. Cas. 1. Similar statutes have been enacted in Maine (1841), Delaware (1852), New Jersey (1907), and Wisconsin (1909). It may be that in the Massachusetts statute "inhabitant" means domiciled inhabitant and "so obtained" means obtained while the plaintiff was still domiciled in Massachusetts, and that the statute was not applicable to "a person who * * * is irked by its laws concerning the severance of the marriage tie * * * [and moves] his home to some other state with more congenial laws" — and there obtains a divorce. Sherrer v. Sherrer, 334 U.S. 343, 360-361, 68 S.Ct. 1087, 1097, 92 L.Ed. 1429, 1 A.L.R.2d 1355, dissenting opinion of Mr. Justice Frankfurter. A state never could forbid a domiciliary to change his domicile in order to obtain a divorce, but could, until Williams v. North Carolina, supra, was decided, refuse to recognize an ex parte divorce obtained at the new domicile. The language of § 39 of the Massachusetts statute of 1835 seems broad enough to be applicable even when, for the purpose of obtaining a divorce, a genuine change of domicile has been effected. The statute, or the public policy underlying it, apparently was applied in refusing recognition to a New York decree, annulling a marriage on a ground on which it could not be annulled in Massachusetts, obtained by a husband years after he had left Massachusetts and had acquired an unquestioned domicile in New York. Cummington v. Belchertown, 149 Mass. 223, 21 N.E. 435, 4 L.R.A. 131; Haddock v. Haddock, supra, 201 U.S. at pages 592-593, 26 S.Ct. 525, 50 L.Ed. 867, 5 Ann. Cas. 1. Of similar scope is the statement of public policy and comity in Felt v.Felt, supra.
Even since Williams v. North Carolina, supra, many state courts have granted injunctions against a domiciliary prosecuting an out-of-state divorce suit. In most cases the ground, or the principal ground, of relief has been a threatened setting up of a fictitious domicile *Page 173 
in a state which had no jurisdiction over either party. But in many cases one of the grounds has been threatened fraud and unfairness in obtaining a divorce on grounds not recognized as such in the state of domicile of the other party or on perjured testimony without any real ground at all, and in subjecting the other party to the expensive and difficult or impossible burden of going to a distant state to oppose such a divorce. An injunction has been granted on such grounds without finding that a threatened change of domicile will be fictitious. Kahn v.Kahn, 325 Ill. App. 137, 59 N.E.2d 874; cf. Usen v. Usen,136 Me. 480, 13 A.2d 738, 128 A.L.R. 1449; Kempson v. Kempson,58 N.J. Eq. 94, 43 A. 97 and note, 15 Harvard Law Review 145. We suggest no opinion as to the constitutional power of the state of Maryland to grant such injunctions, or the law, public policy and equitable principles applicable to, or the effect of, the exercise of any such power.
On the allegations in the instant case, that defendant "left Maryland for the sole purpose of securing a divorce in Florida, having no grounds for divorce in Maryland" and that "the divorce was issued on fraudulent and perjured testimony", without allegation of facts amounting to lack of domicile in Florida and consequent lack of jurisdiction of the Florida court, the State of Maryland (1) before the decision in the first Williams case could have (whether it would have, we need not consider) disregarded the Florida divorce and entertained jurisdiction inrem of an application by the husband for divorce or separation, and (2) before the Florida divorce had been granted, even since the decision in the Williams case, possibly might have enjoined prosecution of suit for divorce in Florida, but (3) since the decision in the Williams case, cannot disregard the Florida divorce and therefore cannot entertain jurisdiction, in rem orin personam, of an application by the husband for divorce or separation. The Florida divorce decree can be collaterally impeached by proof that the court had no jurisdiction, e.g.,
that defendant had not acquired a domicile *Page 174 
in Florida. Plaintiff has the burden of proving that she had not acquired such a domicile. Williams v. North Carolina, supra;Williams v. North Carolina, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577, 157 A.L.R. 1366; Rice v. Rice, 336 U.S. 674, 69 S.Ct. 751; Slansky v. State, 192 Md. 94, 63 A.2d 599.
The bill alleges that the divorce "was issued by the state of Florida without having jurisdiction over the parties", but alleges no facts which amount to lack of jurisdiction or lack of domicile. On the contrary, it alleges that defendant "is a non-resident" of Maryland, and "is living" and "residing" in Florida and "had established residence" in Florida "for the purpose of securing a divorce in accordance with the laws of Florida". "The requisites of domicile are actual residence coupled with the animus manendi". Rice v. Rice, 134 Conn. 440, 445, 58 A.2d 523, affirmed, Rice v. Rice, supra. There may be residence without domicile, but commonly, especially in divorce laws or divorce cases, "residence" means domicile. The most frequent, though not indispensable (Rice v. Rice, supra), evidence of absence of the animus manendi is an early return to the original domicile after obtaining a "tourist divorce".Williams v. North Carolina, 317 U.S. 321, 63 S.Ct. 207, 87 L.Ed. 279, 143 A.L.R. 1273. Florida does not purport to grant divorces when neither party has a domicile there. Sherrer v.Sherrer, 334 U.S. 343, 68 S.Ct. 1087, 1097, 92 L.Ed. 1429, 1 A.L.R.2d 1355. The reasonable interpretation of these allegations is that defendant carried out her purpose of getting a divorce "in accordance with the laws of Florida" by acquiring a domicile there, and has ever since evidenced that domicile by continuing to live there. We cannot assume or infer the contrary, viz.,
that she acquired no domicile but got her divorce in violation of the laws of Florida. Thus the bill fails to show a continuing marital status which might be a basis for a Maryland divorce or separation.
The other prayers of the bill, if not purely incidental to the prayer for a divorce a mensa, furnish no independent *Page 175 
basis for a suit in rem. Manifestly a Maryland court has no jurisdiction to declare a Florida divorce "null and void", except as incidental to jurisdiction over the marital status or some consequence of it. We suggest no opinion whether the Florida divorce, if valid, severed the tenancy by the entireties in Maryland. Cf. Estin v. Estin, 334 U.S. 541, 68 S.Ct. 1213, 92 L.Ed. 1561, 1 A.L.R.2d 1412; Kreiger v. Kreiger, 334 U.S. 555, 68 S.Ct. 1221, 92 L.Ed. 1572; Williams v. North Carolina,317 U.S. 287, 294, 63 S.Ct. 207, 87 L.Ed. 279, 143 A.L.R. 1273; Ricev. Rice, 336 U.S. 674, 69 S.Ct. 751, dissenting opinion of Mr. Justice Jackson. Maryland is "the sole mistress" of the devolution of Maryland land. Hood v. McGehee, 237 U.S. 611, 615, 35 S.Ct. 718, 59 L.Ed. 1144. No judgment or decree, except a judgment or decree of a Maryland Court, state or federal, can directly operate upon title to, or possession of, Maryland land.Fall v. Eastin, 215 U.S. 1, 14-15, 30 S.Ct. 3, 54 L.Ed. 65, 23 L.R.A., N.S., 924, 17 Ann. Cas. 853. By statute Maryland courts are authorized to exercise jurisdiction in rem only in specified proceedings. Code, art. 16, secs. 137, 38. They have no blanket authority to do so in any and every case in which the state itself may have power to give such authority. Even the Declaratory Judgment Act did not dispense with legal requirements as to parties or attempt to obliterate the difference between jurisdiction in personam and jurisdiction in rem. Staley v.Safe Deposit Trust Company, 189 Md. 447, 58 A.2d 144. If the Florida divorce severed the tenancy by the entireties, then plaintiff could by a proceeding in rem obtain partition or sale of the property held in common, or plaintiff and defendant could each sell and convey their respective undivided interests. But if, as plaintiff claims, the Florida divorce did not sever the tenancy by the entireties, then defendant has no interest to convey and plaintiff does not need, and the court has no jurisdiction to grant, without personal service or appearance, an injunction against her "disposing of her interest." Plaintiff apparently is in exclusive possession *Page 176 
of the whole property. Only by some proceeding in some Maryland court can his possession be legally disturbed.
Nor does the prayer for custody of the children give ground for a proceeding against defendant without personal service or appearance. By inference it appears that plaintiff now has sole custody of the elder child, undisturbed by act or threat. However, we may assume, without deciding, (a) that in a proceeding in personam by plaintiff against defendant, the court might award custody of either or both children, and such a decree might be a basis for a proceeding in Florida with respect to the younger child. Cf. Yarborough v. Yarborough, 290 U.S. 202, 54 S.Ct. 181, 78 L.Ed. 269, 90 A.L.R. 924; Restatement,Conflict of Laws, secs. 144-147, and (b) that in a proceedingin rem, without making defendant a party, the court might award custody of the elder child. Cf. Finlay v. Finlay, 240 N.Y. 429, 431, 148 N.E. 624, 40 A.L.R. 937, Cardozo, J.; White v. White,77 N.H. 26, 30-31, 86 A. 353; The Queen v. Gyngall, [1893] 2 Q.B. 232; Restatement, Conflict of Laws, sec. 118; Dietrich v.Anderson, 185 Md. 103, 113-114, 43 A.2d 186. Neither of these assumptions furnishes any basis for jurisdiction on the present bill.
At the argument plaintiff complained that the lower court had dismissed the bill (a) not only as a proceeding in rem, but without qualification, and (b) without leave to amend. Neither of these points was raised below. Under General Equity Rule 11 (2), 1947 Supp., p. 2010 a bill in equity need not contain a prayer for the writ of subpoena, which is to be issued as of course "against any defendant residing in the State". This bill names no defendant residing in this state. Apparently no subpoena was issued. If plaintiff wished a subpoena to be issued and to be renewed or lie dormant indefinitely until defendant may return to Maryland, he should at least have said so, by a prayer for subpoena or otherwise. If the Florida divorce is valid, the court is without jurisdiction, either in rem or in personam, to declare it void, even though it was obtained on fraudulent and perjured *Page 177 
testimony. Only a Florida court could set it aside on that ground. Only by reframing the bill, or tacitly regarding it as reframed, so as to make one of the now incidental prayers, or an amended prayer, the main object of the bill, could it be brought within the jurisdiction of the Maryland courts. In the lower court plaintiff did not ask leave to amend, and in this court did not indicate the nature of any amendment he might wish to make. However, our affirmance of the order below will be without prejudice to any new bill, in rem or in personam, or to an application to the lower court for leave to reinstate this case and amend the bill accordingly.
Order affirmed, with costs.